**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**ROBERT L. MYER**            §
                             §
**v.**                       §            **A-06-CA-599 LY**
                             §
**AMERICO LIFE, INC. AND**   §
**EQUITA FINANCIAL AND INSURANCE** §
**SERVICES OF TEXAS, INC.**  §

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: Americo's Motion to Dismiss or Stay Proceedings in Favor of Arbitration (Clerk's Docket No. 6);  Plaintiff's Response (Clerk's Docket No. 8); Plaintiff's Motion to Remand (Clerk's Docket No. 10); Americo's Response to the Motion to Remand (Clerk's Docket No. 11); Defendant Equita's Response to the Motions (Clerk's Docket No. 16); and Americo's Supplemental Response (Clerk's Docket No. 14).

The Magistrate Court now submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  GENERAL BACKGROUND

Plaintiff Robert Myer ("Myer") has been involved in the business of marketing life insurance and annuity products for a number of years.  On September 4, 1998, Myer executed a written agreement (the "Purchase Agreement") with Americo Life, Inc. ("Americo") to transfer certain entities, assets, and income related to the marketing, sale and administration of 403(b) tax-sheltered businesses.

In connection with this sales transaction, the parties executed several agreements, including a Consulting Agreement[1] in which Myer agreed to render consulting advice and expertise regarding the marketing of life insurance and annuity products to Americo and its insurance subsidiaries in exchange for generous financial compensation.  The Consulting Agreement also contains non-solicitation and non-competition provisions in which Meyer agreed not to compete with Americo or solicit its agents. *See* Consulting Agreement at ¶ 7-8.  The non-competition provisions further contain a "carve out" exception which expressly allows Myer to continue his ownership[2] in Equita Financial and Insurance Services of Texas, Inc. ("Equita") – an insurance agency that markets life insurance and annuity products for various insurance companies including various Americo subsidiaries – and to act "as necessary to fulfill his fiduciary obligations as a director and as Secretary." Consulting Agreement at ¶ 12.

Shortly after the parties executed the above-Agreements, several disputes arose between the parties regarding their respective duties under said Agreements.  Pursuant to the arbitration provisions contained in the Agreements, several of those disputes were submitted to arbitration.  *See* American Arbitration Association ("AAA") Case No. 71-489-00476-00, *In the Matter of the Arbitration Between Americo Life, Inc., et al. v. Robert L. Myer, et al.* ("*Myer I*") (award in favor of Americo and ordering Myer to pay Americo approximately $6 million);[3] AAA Case No. 71-489-00061-04, *In the Matter of the Arbitration Between Americo Life, Inc., et al. v. Robert L. Myer, et al.* ("*Myer II*") (finding that Myer violated the non-solicitation and non-competition provisions of the

---

[1]Exhibit B-2 to Plaintiff's Motion to Remand (hereinafter referred to as "Consulting Agreement").

[2]Myer is a 50% shareholder of Equita.

[3]Exhibit C to Americo's Motion to Dismiss.

Consulting Agreement by doing business with Americo's competitors and awarding Americo approximately $1.4 million);[4] AAA Case No. 71-195-Y-00072-05, *Americo Life, Inc. v. Robert L. Myer & Strider Marketing Group, Inc.* ("*Myer III*") (ongoing proceeding in which Americo is seeking $913,441 under the Agreements).[5]

In addition to the above-arbitration disputes, on July 6, 2006, Plaintiff filed the instant lawsuit against Americo and Equita in the 53rd Judicial District of Travis County, Texas. *See Myer v. Americo Life, Inc. and Equita Financial Services of Texas, Inc.*, Cause No. D-16N-06-002488.[6] Myer's Original Petition requests injunctive and declaratory relief that the non-competition clause contained in the Consulting Agreement between Myer and Americo is unenforceable and that he should be excused from further performance. Myer argues that his contractual duties to Americo under the Consulting Agreement conflict with his fiduciary duties to Equita. Although Equita was not a signing party to any of the underlying Agreements, it was specifically mentioned in the Agreements and Myer now seeks a declaration in this lawsuit concerning Equita's rights and obligations under the Consulting Agreement.

On July 28, 2006, Americo removed this case to federal court on the basis of diversity of citizenship claiming that "the real parties in interest are citizens of different states and no proper defendant is a citizen of Texas." Americo's Notice of Removal at ¶ 3. Americo contends that there is complete diversity in this case as is required by 28 U.S.C. § 1332 because it is a Missouri corporation, Myer is a Texas resident, and Equita, also a Texas resident, has been improperly joined

---

[4]Exhibit D to Americo's Motion to Dismiss.

[5]Exhibits F & G to Americo's Motion to Dismiss.

[6]Exhibit A to Plaintiff's Motion to Remand.

in this suit to defeat diversity jurisdiction and should be realigned with Myer as a Plaintiff in this case. Specifically, Americo argues that Equita was not a party to the Consulting Agreement at issue in this case and is, therefore, not a proper defendant in this case. Americo claims that Myer improperly joined Equita as a defendant in this lawsuit for the sole purpose of defeating diversity jurisdiction. Shortly after removing this case to federal court, Americo filed the instant Motion to Dismiss (Clerk's Docket No. 6) arguing that the Court should dismiss or stay the proceedings in this case in light of the fact that the Agreements at issue contain mandatory arbitration clauses. Myer opposes the motion and argues that arbitration of the instant dispute is not required since the arbitration agreement between the parties permits litigation of actions for injunctive relief, such as the instant action. Myer has also filed a Motion to Remand (Clerk's Docket No. 10) this case to state court, arguing that this case has been improperly removed to federal court.

On November 1, 2006, the District Court referred the Plaintiff's Motion to Remand and the Defendant's Motion to Dismiss to the instant Magistrate Court pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Because the Motion to Remand deals with the Court's subject matter jurisdiction over this lawsuit, the Court will first address the Motion to Remand before addressing the Motion to Dismiss.

## II.  THE MOTION TO REMAND

In his Motion to Remand, Myer argues that Americo improperly removed this case to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Myer argues that Americo has failed to establish diversity jurisdiction in this case because Equita, a Texas citizen, is a necessary and proper party defendant in this lawsuit and, therefore, Equita's presence in this suit destroys diversity

4

jurisdiction. Americo counters that Myer has no valid claim against Equita in this case and that Myer improperly joined Equita as a party to this case for the sole purpose of defeating diversity jurisdiction. Equita also opposes the Motion to Remand and contends that it is not a proper party defendant in this lawsuit because Myer cannot maintain any causes of action against it.

## A.    Standard of Review and the Law of Improper Joinder

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993 (2001). Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. 28 U.S.C. §§ 1331, 1332. In a removed action, a district court is required to remand a case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *Howery*, 243 F.3d at 916. In order to determine whether jurisdiction is present, the claims set forth in the state court petition are considered as of the time of removal. *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). Any ambiguities are construed against removal because the removal statute is strictly construed in favor of remand. *See Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002).

With regard to claims of improper joinder, the Fifth Circuit has stated that:

> The starting point for analyzing claims of improper joinder must be the statutes authorizing removal to federal court of cases filed in state court. The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Subsection (b) specifies that suits arising under federal law are removable without regard to the citizenship of the parties; all other suits are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." To remove a

case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied. Relatedly, a district court is prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been improperly or collusively joined to manufacture federal diversity jurisdiction.

*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004), *cert. denied*, 544 U.S. 992 (2005).

The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper. *Id.* at 574. A defendant can establish improper joinder by showing either that: (1) the plaintiff fraudulently pleaded false jurisdictional facts, or (2) that there is no reasonable basis on which the district court can predict that the plaintiff might be able to recover against the non-diverse defendants. *Id.* at 573. In the instant case, Americo does not argue that Myer fraudulently pleaded false jurisdictional facts. Accordingly, the Court's inquiry in this case will focus on whether Plaintiff's state court petition alleges any viable claims against Equita.

The Fifth Circuit has explained that the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* In considering whether the plaintiff may recover, the court need not determine whether the plaintiff will actually, or even probably, prevail on the merits, but look only for a possibility that he may do so. *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 308-09 (5th Cir. 2005). Courts must evaluate the factual allegations in the light most favorable to the plaintiff and resolve all ambiguities in controlling state law in the plaintiff's favor. *Id.* at 308.

In *Smallwood*, the Fifth Circuit clarified the proper procedures for predicting whether a plaintiff has a reasonable basis of recovery under state law, concluding that district courts may resolve

the issue in one of two ways.  The first method is for the court to conduct "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573.  "Ordinarily, if a plaintiff can survive a Rule12(b)(6)-type challenge, there is no improper joinder." *Id.*  Under the second method, the court may, in its discretion, "pierce the pleadings and conduct a summary inquiry" in those cases in which a plaintiff has stated a claim but has "misstated or omitted discrete facts that would determine the propriety of joinder." *Id.*  Because the presence of such discrete and undisputed facts is not at issue in the instant case, the Court need only apply the "ordinary" Rule 12(b)(6)-type analysis to determine whether Myer's state court petition asserts a viable claim under Texas law against Equita.

**B.     Does Myer's petition assert a viable claim against Equita under Texas law?**

In his Petition, Myer seeks a declaration, under the Texas Uniform Declaratory Judgment Action, Tex. Civ. Prac. & Rem. Code, § 37.003,  that the Non-Competition clause contained in the Consulting Agreement "is invalid and unenforceable in general, or, in the alternative, that it is unenforceable as to the operations of Equita."  Petition at Sec. V, Ex. A to Plaintiff's Motion to Remand.  Myer also seeks "declaratory relief as to the extent of his fiduciary duties to Equita and his ability, if any, as an owner and director [of Equita] to influence the direction of Equita's future production."  Myer's Motion to Remand at 7.  Finally, Myer "is asking for some declaration of his duties under the Consulting Agreement which, short of the requested declaration that it is not enforceable at all, will require that his duties to Equita also be clarified by the declaration." *Id.*

The stated purpose of the Texas Declaratory Judgments Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Bonham State Bank v. Beadle*, 907 S.W.2d  465, 467 (Tex. 1995) (quoting Tex. Civ. Prac. & Rem. Code § 37.002(b)

7

(Vernon 1986)).  The statute expressly provides that it is "remedial" and "is to be liberally construed." *Id.*  A declaratory judgment is appropriate only if a "justiciable controversy" exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought.  "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (internal citations and quotations omitted).  "A declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." *Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.– Austin 2002, pet. denied).

Defendants argue that Myer has failed to allege a viable claim under the Texas Declaratory Judgment Act against Equita because there is no "justiciable controversy" between Myer and Equita at this time.  Defendants emphasize that Equita has not filed any causes of action against Myer regarding his fiduciary duty or with regard to any other issues.  While Defendants are correct that Equita has not filed a lawsuit against Myer, and that relief under the Texas Declaratory Judgment Act is unavailable for theoretical, hypothetical or contingent situations,[7] "[a] justiciable controversy . . . does not necessarily equate to a fully ripened cause of action." *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.– Austin 1998, no pet.).  To constitute a justiciable controversy under the Texas Declaratory Judgment Act a party need not point to an actual cause of action which has been

---

[7]*See Id; See also, California Products, Inc. v. Puretex Lemon Juice, Inc.,* 334 S.W.2d 780, 782 (Tex. 1960) (noting that "the Declaratory Judgments Act gives the court no power to grant advisory opinions, or to determine matters not essential to the decision of the actual controversy although such questions may in the future require adjudication, or passing upon contingent or certain other situations");  *Loyd v. ECO Resources, Inc*, 956 S.W.2d 110, 126 (Tex. App.– Houston [14 Dist.] 1997, no pet.) ("The Declaratory Judgments Act gives the court no power to pass upon hypothetical or contingent situations, or determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication").

filed, but rather must point to the presence of "ripening seeds of a controversy." *Ainsworth v. Oil City Brass Works*, 271 S.W.2d 754, 761 (Tex. Civ. App.– Beaumont 1954, no writ).  As the court in *Ainsworth* explained:

> It is not necessary that a person who seeks a declaration of rights under this statute shall have incurred or caused damage or injury in a dispute over rights and liabilities, but it has frequently been held that an action for declaratory judgment would lie when the fact situation manifests the presence of "ripening seeds of a controversy." Such appear where the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between such parties as to their legal rights have not reached the state of an actual controversy.
>
> ***
>
> . . .it might be said that the rights to be determined by a declaratory judgment or decree, as a general rule may be, and perhaps usually are rights not *in praesenti*, but rights which are to come into full fruition or rights which will be fully vested at some future time. Therefore, in a proper case, if uncertainties and controversies arise between interested parties as to what their respective right will be and which have accrued or become vested, and to avoid needless hazard or possible losses, it is necessary to presently have a decision of such uncertain or controverted rights, then there is an actual need of and justification for a declaratory adjudication.

*Id.* at 760-61 (internal quotations and citations omitted).

Therefore, in a declaratory judgment action, "a party to a contract may file suit to declare rights under a contract if the circumstances show the presence of 'ripening seeds of controversy.'" *American National Ins. Co. v. Cannon II,* 86 S.W.3d 801, 806 (Tex. App.– Beaumont 2002, no pet.). Thus, in *Cannon II*, present and former insurance agents subject to a contractual non-compete clause brought an action against insurance companies for breach of contract, fraud, negligent misrepresentation, and violations of the Deceptive Trade Practices Act.  The insurance companies argued that the employed  insurance agents did not have standing and had not presented ripe claims to challenge the non-competition clause before they were terminated and before their non-compete

clauses had been triggered.  The court rejected this argument noting that "in a declaratory judgment action, a party to a contract may file suit to declare rights under a contract if the circumstances show the presence of 'ripening seeds of controversy.' " *Id.* at 806.  The court reasoned that "the employed plaintiff has a justiciable interest in determining whether, upon leaving the company, the plaintiff would be required to comply with the non-compete provision, particularly when, as here, counterclaims to enforce the non-compete clauses have been filed." *Id.*

The Court finds that Myer has submitted evidence showing that his allegations regarding Equita demonstrate "the ripening seeds of a controversy" and the existence of a justiciable issue. On August 11, 2005, Equita's President, Richard Wolfe, sent a letter to Myer in response to a prior letter from Myer regarding the arbitration award in favor of Americo (relating to Myer's alleged breaches of his Consulting Agreement with Americo).  In relevant part, Equita's letter states the following:

> I am in receipt of your letter of July 26, 2005, regarding the arbitration award in favor of Americo relating to alleged breaches of your Consulting Agreement. I can appreciate your predicament.  However, I think you may be placing your personal interests above those of the company [Equita].
>
> As a director of Equita, you are in a fiduciary relationship to the corporation and its shareholders. Several duties arise from this relationship; namely, the duties of obedience, loyalty and due care. Your loyalty must lie in favor of the corporation.  You must act in good faith and cannot allow your interests to take precedence over those of the corporation.
>
> Your letter infers that the wishes of Americo take priority over what is good for Equita because of your obligations to Americo. This suggestion appears to place your interests ahead of those of the corporation; and, if followed, could result in a breach of your fiduciary duties to Equita.
>
> *** 
>
> Bob, I see no need to provide Americo with information on all of our marketing activities in writing.  I have a good working relationship with Americo.  However, that does not mean that Equita needs to disclose proprietary and/or confidential information

to them. . . I must caution you that I intend to honor my fiduciary duty to the corporation and expect you to do so, as well.

Exhibit C to Myer's Motion to Remand.

The Court finds that the above-letter demonstrates the "ripening seeds of controversy" between Equita and Myer regarding their disagreement over Myer's fiduciary duties to Equita – as a shareholder and director – and Myer's contractual duties to Americo under the Consulting Agreement. The settlement of such controversies "before they ripen into violations of law or some breach of contractual duty is a fundamental purpose of the Declaratory Judgment Act." *U.S. Coffee & Tea Co. v. Texas & Pacific RY, Co.*, 280 S.W.2d 290, 293 (Tex. Civ. App.– Dallas 1955, writ ref'd n.r.e.). The Court finds that Equita's letter, the numerous arbitrations between Americo and Myer, and the parties' arguments in the instant case demonstrate a clear indication of the extent of the parties' differences in this case such that the Court may presume legal action is imminent. *See Taylor v. State Farm Lloyds, Inc.*, 124 S.W.3d 665 (Tex. App.– Austin 2003, pet. denied) (holding that insured's controversy with insurer over legality of policy was ripe for adjudication even though insured had not filed a claim against the insurer); *U.S. Coffee & Tea Co.*, 280 S.W.2d at 293 (finding that the fact that there had been no threatened suit by owners of property adjacent to railroad's siding tracks for damages for removal of such tracts did not preclude declaratory judgment action determining railroad's rights to remove such tracks and determining that railroad would not be liable for damages upon such removal).

In its brief, Americo argues that Myer has failed to present a viable claim under the Texas Declaratory Judgment Act because Myer's only potential claim regarding Equita – Myer's request for a declaration that he is not violating his fiduciary duties to Equita – is not permitted under the Act since the statute cannot be used to determine potential tort liability, citing *Arbor v. Black*, 695

11

S.W.2d 564 (Tex. 1985); *Averitt v. Pricewaterhouse Coopers*, L.L.P., 89 S.W.3d 330 (Tex. App.–

Ft. Worth 2002, no pet.); *and Stein v. First Nat'l Bank of Bastrop*, 950 S.W.2d 172 (Tex. App.–

Austin 1997, no pet.).  While Americo is correct that Texas courts have held that trial courts should

decline to exercise jurisdiction over declarations of non-liability of a potential defendant in

traditional tort actions because it deprives "the real plaintiff of the traditional right to choose the time

and place of suit," *see Id.*, such cases are inapplicable to the facts and issues presented in this case

at bar.  First, Americo has ignored the fact that Myer is seeking a declaration not only as to his

fiduciary duties to Equita, but also as to duties "fiduciary or otherwise, to Equita." Myer's Motion

to Remand at 8.  In addition to his claims regarding his fiduciary duties to Equita, Myer is seeking

a declaration as to his rights and duties under the contracts at issue, which is a proper use of the

declaratory judgment action.  In fact, "(c)onstruction and validity of contracts are the most obvious

and common uses of the declaratory judgment action." *Trinity Universal Ins. Co. v. Sweatt*, 978

S.W.2d 267, 271 (Tex. App.– Fort Worth 1998, no pet.) (holding that principle that it is improper

to seek a declaratory judgment of non-liability did not apply to insurer's contract action for

declaration that insured's misrepresentation voided policy or that policy provided no coverage where

case was a contract action).  Finally, the Court again reiterates that Myer has not presented a

hypothetical or potential claim under the Act, but rather, has presented the Court with a ripe,

justiciable controversy under the Texas Declaratory Judgment Act.

     As noted, in considering whether the Plaintiff may recover, the Court need not determine

whether Myer will actually, or even probably, prevail on the merits, but looks only for a *possibility*

that Myer may do so.  *Guillory*, 434 F.3d at 308-09.  Based upon the foregoing, therefore, the Court

finds that Myer has alleged facts which are sufficient to demonstrate there is a *possibility* of recovery under the Texas Declaratory Judgment Act with regard to his claims against Equita.

As the removing party in this case, Americo bears the "heavy burden" of demonstrating improper joinder by showing that there is no reasonable basis to predict that Myer might be able to recover against Equita under Texas law. *Smallwood*, 385 F.3d at 576. Because Americo has failed to show that there is no reasonable basis to predict that Plaintiff might be able to recover against Equita, Americo has failed to prove improper joinder of Equita in this case.

### III. THE REQUEST FOR REALIGNMENT

As an alternate to its request that the Court deny the motion to remand, Americo requests that Equita be realigned as a plaintiff. Such a realignment would create complete diversity, thus producing removal jurisdiction. As Americo correctly notes, realignment is to be based on "whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side." *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1178 (5th Cir. 1984) (*quoting* Wright, Miller & Cooper, *Federal Practice and Procedure* § 3607 at 639). As is plain from the previous discussion, Equita and Myer are not on the same side of the dispute regarding the fiduciary and other duties owed by Myer to Equita under the agreements between the parties. Thus, realignment is not appropriate in this case. Accordingly, there is a lack of complete diversity in this case and the Court is without jurisdiction to hear the merits of this case. Accordingly, Plaintiff's Motion to Remand should be granted and this case should be remanded to state court pursuant to 28 U.S.C. § 1447.

### IV.  RECOMMENDATION

The Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion to Remand (Clerk's Docket No. 10), and remand the above-styled action to the 53rd District Court of Travis

County, Texas, pursuant to 28 U.S.C. § 1447.  The Court **FURTHER RECOMMENDS** that the District Court decline to rule on the remaining motions, as it lacks the jurisdiction to do so.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985);  *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this the 30th day of January, 2007.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE